## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                        )
**IVAN HODGE,**                                         )
                                                        )
     **Petitioner,**                            )
                                                        )
     **v.**                                    )       **Civil Action No.**
                                                        )       **12-10676-FDS**
**ANTHONY MENDONSA,**                                   )
                                                        )
     **Respondent.**                            )
_____)

## MEMORANDUM AND ORDER
## ON PETITION FOR HABEAS CORPUS

**SAYLOR, J.**

     This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody.  Petitioner Ivan Hodge is serving a life sentence for second-degree murder, as well as a four- to five-year concurrent sentence for unlawful possession of a firearm.  He was convicted on both counts on March 14, 2007, following a thirteen-day jury trial at which he was tried with a co-defendant, O'Neil Francis.

     Hodge alleges that the state trial court violated his federal constitutional right to present a complete defense by excluding certain statements made by his co-defendant to Hodge's family members and former attorney.  For the reasons set forth below, the petition will be granted.

I.      **Background**

    A.      **Factual Background**[1]

On March 18, 2005, Tacary Jones was shot and killed while boarding an MBTA bus in the Dorchester section of Boston.  Ivan Hodge, along with a co-defendant, O'Neil Francis, was arrested and ultimately convicted of second-degree murder in connection with Jones's death.

Hodge and Francis were both riding on an MBTA bus as it traveled down Columbia Road in Dorchester.  When the bus stopped at Geneva Avenue, several young men—including Jones—boarded the bus through the back door.  A dispute took place, during which Jones was shot and killed.

Eyewitnesses recounted different versions of what occurred before and during the bus stop.  The Massachusetts Appeals Court described the events as follows:

> Eyewitnesses testified that [Francis and Hodge] boarded the bus together and sat down.  As the bus approached the Geneva Avenue bus stop, witnesses saw Hodge pass a camouflage knife to Francis, who passed it back to Hodge; and, when [Jones] and his friends boarded the bus at that stop, both [Francis and Hodge] got up to exit and confront the victim.  Shalonda Smith testified that she heard Hodge say, "[W]e've got that thing," and "[W]e could get him now, why wait, like, what are we waiting for," and "I should shank him up," at which point Francis pulled out a palm-sized gun.  Another witness, who was driving directly behind the bus, heard a "loud pop," and saw [Francis and Hodge] standing outside the rear of the bus, smiling and laughing.  The same witness also saw Hodge tuck a black, semiautomatic gun into his waistband or pants pocket. [Francis and Hodge] were observed fleeing from the scene together and later were seen running from the place where the murder weapon was found together with an army knife and clothing matching that worn by Hodge.

*Commonwealth v. Francis*, 78 Mass. App. Ct. 1107 at *2 (2010).

---

[1] The state court's factual determinations, including those made on appeal, are presumed to be correct.  28 U.S.C. § 2254(e)(1); *see also Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003).  Where the state court has not made any factual determinations with regard to a particular subject, the Court will summarize the facts as set forth in the record, as long as those facts are consistent with the state court findings.

Although at least four eyewitnesses testified at trial, none of them testified as to whether Francis or Hodge fired the shot.  At least some circumstantial evidence suggests that Francis was more likely to have been the shooter.  In particular, a medical examiner testified at trial that the bullet traveled in a downward trajectory from Jones's chest to his back, dropping approximately four inches between the point of entry and his back.  (7 Tr. 148).  This trajectory suggests that the shooter was likely taller than Jones.  Undisputed testimony indicated that Jones and Hodge were both approximately five feet, eight inches tall; Francis was at least six feet tall.

Following the shooting, Francis and Hodge fled the scene.  They were soon caught and detained for questioning.  Hodge was arrested that night, and arraigned on March 21, 2005, on a murder complaint.  Francis was released after questioning, but later indicted by a grand jury.

The evening after Hodge's arraignment, Hodge's father informed his attorney, John Cunha, that Francis wanted to speak to him about the shooting.  The next morning, Francis and members of Hodge's family arrived at Cunha's office.  Cunha testified before the state-court trial judge that Francis told him that one of Jones's friends pulled a gun out and pointed it at Hodge.  According to Francis's account, Francis then grabbed the hand of the person holding the gun in an effort to protect Hodge.  Francis indicated that he grappled for control of the gun with one of Jones's friends, and was holding the gun when it fired.  He also told Cunha that "when the shot was fired . . . Ivan Hodge was already off the bus."  (9 Tr. 173).

After Francis left Cunha's office, he allegedly traveled to his grandmother's house with Hodge's mother.  There, Hodge's mother says he made further statements about having shot Jones.

Francis reportedly also made a third set of statements about the shooting to Hodge's

3

brother.  In particular, he told him that "[Hodge] had nothing to do with it," and that "he didn't want [Hodge] to go down for something he didn't have anything to do with."

    **B.**    **Procedural Background**

On May 3, 2005, a Suffolk County grand jury returned two indictments against Hodge and Francis.  Each indictment charged one count of murder, in violation of Mass. Gen. Laws ch. 265, §1, and one count of unlawful possession of a firearm, in violation of Mass. Gen. Laws ch. 269, §10(a).  The cases proceeded to jury trial, and defendants were tried together as co-defendants.  On March 14, 2007, after a thirteen-day trial, the jury convicted both men on both counts.

None of Francis's statements about Hodge's role in the shooting were admitted at trial.  Hodge's attorney attempted to call both Cunha and Hodge's mother.  The prosecution objected to the testimony of both witnesses on the basis that Francis's statements were hearsay, and were not sufficiently against penal interest to qualify for an exception.  The trial judge sustained the prosecutor's objection, and excluded all testimony about Francis's statements about Hodge's role in the shooting.

Following trial, Hodge appealed his conviction.  Among other challenges, he argued that the "exclusion of [Francis's] multiple confessions (which exonerated [Hodge]) . . . violate[d] [his] constitutional rights to produce all favorable proofs, due process of law and a fair trial."  On November 9, 2010, the Massachusetts Appeals Court affirmed the conviction.  In response to Hodge's challenge regarding the exclusion of Francis's statements, the court largely focused on whether the statements were properly excluded as hearsay.  In a footnote, the court made brief reference to Hodge's constitutional argument.  It stated:

4

"Hodge's argument that the statement should have been treated like third-party culprit evidence does not appear to have been made below. The analogy is not apt; but even if it were, the exclusion of the statement created no substantial risk of a miscarriage of justice."

*Commonwealth v. Francis*, 78 Mass. App. Ct. 1107 (2010).

Hodge filed an application for leave to obtain further appellate review from the Massachusetts Supreme Judicial Court, but that application was denied on April 27, 2011. He filed this petition for habeas relief on April 16, 2012.

## II.   Standard of Review

As a general proposition, "federal habeas review is precluded . . . when a state court has reached its decision on the basis of an adequate and independent state-law ground." *Burks v. DuBois*, 55 F.3d 712, 716 (1st Cir. 1995), *citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991). That rule extends to situations in which "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30.

In those cases where an independent and adequate state-law ground does not preclude review, an application for a writ of habeas corpus brought by a state prisoner "with respect to any claim adjudicated on the merits in State court proceedings" may be granted only if those proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). However, if a claim was not "adjudicated on the merits in State court proceedings," then the claim should be reviewed *de novo* by the federal district court. *Clements v. Clarke*, 592 F.3d 45, 52 (1st Cir.

5

2010).

In determining whether a claim was adjudicated on the merits in state court, the Court looks to whether the state court decision resolved the parties' claims, with *res judicata* effect, based on the substance of the claim advanced, rather than on a procedural or other ground.  *See id.*  Furthermore, to garner the protection of deferential review, the claim must not only be adjudicated on the merits, but, specifically, the merits of the *federal* claim at issue.  *Id.*

## III.   Analysis

### A.   Procedural Default

Respondent contends that petitioner's claim should be denied because the Massachusetts Appeals Court has already determined it to be procedurally defaulted.

Massachusetts has a "long-standing rule that issues not raised at trial . . . are treated as waived."  *Commonwealth v. Curtis*, 417 Mass. 619, 627 (1994).  While a state appellate court will review claims based on issues that have not been raised below, it does so only to ensure that the judge's error below did not create  "a substantial risk of a miscarriage of justice."  *Commonwealth v. Freeman*, 352 Mass. 556, 564 (1967).  Unless such a risk of miscarriage of justice is found, the issue is considered procedurally defaulted.

Here, the Massachusetts Appeals Court did not explicitly rule that petitioner's claim was procedurally defaulted.  As noted above, in a footnote, the court stated that "Hodge's argument that the statement should have been treated like third-party culprit evidence does not appear to have been made below.  The analogy is not apt; but even if it were, the exclusion of the statement created no substantial risk of a miscarriage of justice."  While the court's analysis is brief, its reference to the issue as not having been raised below, combined with the application of

6

the "miscarriage of justice" standard, clearly indicates that the Appeals Court intended to treat the claim as procedurally defaulted.

A petitioner's procedural default in state court will generally act as a bar to federal habeas review.  Federal courts may not substantively review a habeas petition when it challenges a state court's decision that rests upon a state-law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  A petitioner's procedural default is typically an adequate and independent state-law ground sufficient to bar federal habeas review.  *Horton v. Allen*, 370 F.3d 75, 80 (1st Cir. 2004).

However, the adequacy of a state's procedural bar to the assertion of a federal question is, itself, a federal question.  *Douglas v. Alabama*, 380 U.S. 415, 422 (1965).  It is thus an appropriate matter for a federal court to decide based on its own evaluation of the record.  Where a state court has made a determination of procedural default despite clear record evidence that a petitioner has complied with the state's procedural rules, that determination will not serve as an adequate state-law ground.  *See, e.g., Williams v. Lane*, 826 F.2d 654, 660 (7th Cir. 1987) (rejecting the adequacy of a state court's determination of procedural default where "the court [chose] to ignore the fact that petitioner [had] fully complied with the state's articulated procedural rules and simply deem[ed] the petitioner's claim waived"); *see also Kubat v. Thieret*, 867 F.2d 351, 366 n.11 (7th Cir. 1989) (addressing the substance of petitioner's claim after noting that the Illinois Supreme Court ruled that petitioner had waived the claim by failing to raise it on direct appeal, because "[t]he record clearly shows . . . that [petitioner] did in fact raise and argue the issue in his brief on direct appeal"); *accord Gilday v. Callahan*, 59 F.3d 257, 274 (1st Cir. 1995) (citing *Williams* for the proposition that a "state court determination of waiver

7

does not preclude federal habeas review where record shows that petitioner fully complied with state's articulated procedural rules").

Here, the state court's determination of procedural default was based on a finding that the critical argument—that Francis's statement should have been treated like third-party culprit evidence—"[did] not appear to have been made below." In light of the record, it is difficult to understand the court's conclusion. At a sidebar conference following a *voir dire* with attorney Cunha, petitioner's attorney cited explicitly to "*Chambers versus Mississippi*," 410 U.S. 284 (1973), a case in which the Supreme Court expressly held that the exclusion of third-party culprit evidence can constitute a denial of a defendant's constitutional rights. (9 Tr. 212). Petitioner's attorney went on to explain as follows:

> [T]hat was a case in which a co-defendant had made a confession and the trial judge excluded the confession as hearsay. The confession – in the confession he exculpated the defendant who was on trial and the princip[le] that I glean from – from that case and – and the U.S. Supreme Court reversed the conviction saying state – state rules on hearsay – generally we – we subscribe to state rules on hearsay, but they cannot be used to interfere with a defendant's right to a fair trial. And it seems to me that we're – we're in that territory here. That . . . to prevent me – Hodge from getting the statements that this co-defendant made and arguing as I have indicated to the court would in effect deprive him of an effective defense. And you can't use technical rules of hearsay to prevent or to interfere with a defendant's right to a fair trial.

*Id*.

By this Court's reading, petitioner's counsel directly raised the issue that the exclusion of Francis's statements deprived his client of his constitutional rights under *Chambers*. On those facts, this Court can find no basis to agree with the state court that petitioner waived his objection by failing to raise it at trial. The record simply does not support the state court's determination of procedural default, and this Court may properly consider petitioner's claim free

from procedural default.

**B.      Petitioner's Constitutional Claims**

**1.      Standard of Review**

The parties dispute the appropriate standard of review with which this Court should review petitioner's claim.  Respondent contends that the claim should be reviewed under the deferential standard set forth in 28 U.S.C. § 2254.  Petitioner contends that the Court should review the claim *de novo*.

A federal court's review of a federal claim on a habeas petition is governed by 28 U.S.C. § 2254.  Under the statute, a federal court may not grant habeas relief with respect to a claim "adjudicated on the merits in state court" unless the state court's decision was:

> (1) contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the Unites States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A claim is "adjudicated on the merits," giving rise to the deferential standard, if "there is a decision finally resolving the parties' claims, with res judicata effect, that is based on the *substance* of the claim advanced, rather than on a procedural, or other, ground."  *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 66 (1st Cir. 2009) (emphasis added).  As the First Circuit has reasoned, a federal court "can hardly defer to the state court on an issue that the state court did not address."  *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001).

Here, the substance of petitioner's federal claim was never addressed by the state courts.  The Appeals Court considered whether the exclusion of Francis' statements was proper, but that

consideration was based on state-law hearsay analysis, not federal constitutional principles.  The court concluded that Francis's statements were not sufficiently against penal interest to qualify for a hearsay exception, and therefore determined that the trial court's exclusion of the statements was appropriate.

Although petitioner's counsel raised the federal constitutional question on direct appellate review, the Appeals Court did not reach the merits of that question, because it dismissed the argument as procedurally defaulted.  The court thus did not reach the substance of petitioner's constitutional claim.  Accordingly, the deferential standard of review set forth in § 2254 is not applicable, and this Court will conduct *de novo* review.

**2.**   **Right to a Fair Trial**

**a.**   **General Principles**

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. at 324 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  That right is a fundamental element of due process of law, *Washington v. Texas*, 388 U.S. 14 (1967), and includes a defendant's right to present witnesses in his own defense. *Chambers v. Mississippi*, 410 U.S. 284 (1973).

The right to present a defense is subject to "reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  State and federal rulemakers have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Id*. at 308.  Restrictions that are intended to further the "legitimate interest" of state and federal governments in "ensuring

that reliable evidence is presented to the trier of fact in a criminal trial" are typically upheld. *Id.* at 309.

However, state evidentiary rules can, in some circumstances, abridge an accused's right to present a defense. Where exculpatory evidence is excluded under state rules of evidence that "infringe upon a weighty interest of the accused" and are "arbitrary" or "disproportionate to the purposes that they are designed to serve," a constitutional violation may occur. *Holmes*, 547 U.S. at 325 (citing *Crane*, 476 U.S. at 690).

### b.     <u>Third-Party-Culprit Evidence</u>

A defendant is entitled under some circumstances to introduce evidence tending to prove that another person committed the crime charged in order to raise a reasonable doubt about the defendant's guilt. The Supreme Court has, on rare occasions, overturned defendants' convictions in circumstances where state evidentiary rules have barred defendants from introducing such third-party-culprit evidence.

For example, in *Washington v. Texas*, 388 U.S. 14 (1967), a state statute barred any person charged as a participant in a crime from testifying in defense of another alleged participant. The statute precluded petitioner Washington, on trial for murder, from calling an alleged co-participant who would have testified at trial that "[the defendant] pulled at him and tried to persuade him to leave, and that [the defendant] ran before [his co-participant] fired the fatal shot." *Washington*, 388 U.S. at 16. The Supreme Court overturned the conviction, holding that "the State arbitrarily denied [the defendant] the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id.* at 23.

In *Chambers v. Mississippi*, 410 U.S. 284 (1973), petitioner Chambers was convicted of murdering a policeman and sentenced to life imprisonment.   At trial, Chambers was precluded on state evidentiary grounds from introducing evidence that another man had made four separate confessions to the crime.  The Supreme Court noted that the rejected testimony bore assurances of trustworthiness, and was critical to Chambers's defense.  Given the facts before it, the Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers*, 410 U.S. at 302.

More recently, the Court overturned a conviction based on a South Carolina rule of evidence that treated a defendant's proffered third-party-culprit evidence as presumptively unreasonable when there was strong forensic evidence of the defendant's guilt. *Holmes*, 547 U.S. at 323-24.  In that case, petitioner Holmes was convicted of murder, first-degree criminal sexual assault, first-degree burglary, and robbery.  He was sentenced to death.  A state post-conviction review granted Holmes a new trial.  At the second trial, the state relied heavily on forensic evidence.  Holmes argued that he was framed, and attempted to introduce testimony from several witnesses that placed a third-party culprit at the scene of the crime right before the assault, as well as four other witnesses who testified that the third party had either admitted to committing the crimes or acknowledged that Holmes was innocent.  The trial court excluded the third-party-culprit evidence, and the South Carolina Supreme Court upheld the exclusion on the basis that there was strong forensic evidence of Holmes's guilt.  The Supreme Court held that because the South Carolina evidentiary rule looked only at the relative strength of the prosecution's evidence, rather than the probative value of the third-party-culprit evidence in

relation to all of the other facts, the rule was arbitrary.  *Id*. at 330-31.

However, *Holmes* made clear that "frequently matters offered into evidence [to prove third-party culpability] are so remote and lack such connection with the crime that they are excluded." 547 U.S. at 327.  Thus, the court in *Holmes* drew a distinction between evidentiary rules that permit the exclusion of evidence that is "speculative or remote, or does not tend to prove or disprove a material fact in issue in the defendant's trial," and evidentiary rules that function arbitrarily or disproportionately to the goal they seek to serve.  *Id*.

The First Circuit has indicated that, although *Chambers* remains good law, it is only to be invoked "in extreme cases." *Fortini v. Murphy*, 257 F.3d 36, 45-46 (1st Cir. 2001).  In determining whether a state court's exclusion of third-party-culprit evidence constitutes a constitutional violation, a court should look to (1) "the basis for the exclusion" and (2) any "special circumstances that might justify an exception." *O'Brien v. Marshall*, 453 F.3d 13, 20 (1st Cir. 2006).  The First Circuit has suggested that a reviewing court's analysis will look "something like a classic due process balancing . . . namely, that federal rights are violated only when state rules or particular results are shocking or indefensible." *Id*. at 19-20.  Even if a state evidentiary rule is "generally defensible," it may under certain circumstances produce an unconstitutional result. *White v. Coplan*, 399 F.3d 18, 24 (1st Cir. 2005).

It is worth noting that there is some indication that the Supreme Court may be questioning the appropriateness of such "*ad hoc* balancing," *O'Brien*, 453 F.3d at 20.  In a recent case, the Supreme Court held that a state court's reliance on a state evidentiary law that excluded extrinsic evidence aimed at attacking a rape victim's credibility was not an unreasonable application of clearly established Supreme Court precedent. *Nevada v. Jackson*, 2013 U.S.

LEXIS 4166 (June 3, 2013).  In a *per curiam* opinion, the Court indicated that its cases do not

"clearly establish that the Constitution requires a case-by-case balancing of interests" before a

state evidentiary rule can be enforced.  *Id.*

However, at least as of this writing, Supreme Court and First Circuit precedent require a

case-specific inquiry into whether the exclusion of exculpatory evidence on hearsay grounds

violated a defendant's right to present a complete defense.  In *Chambers*, the Supreme Court

indicated that in such cases, it was the application of a hearsay rule to a particular case, and not

the rule itself, that bore examining.  *Chambers*, 410 U.S. at 302.  The court further highlighted

the case-specific nature of its holding, stating that its holding was "simply that under the facts

and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial."

*Chambers* at 303.  Similarly, as quoted above, the First Circuit has indicated that a district court

should undertake "something like a classic due process balancing" to ascertain when either

"rules or particular results" cause a constitutional violation.  *O'Brien*. 453 F.3d at 19-20.

This Court therefore will not read *Nevada v. Jackson*—which examined the application

of a state law excluding extrinsic evidence aimed at impeachment under the deferential AEDPA

standard—as pronouncing any new principle of law that is applicable here.  Accordingly, the

Court will undertake an analysis of the application of the state hearsay rule to this case, focusing

on (1) "the basis for the exclusion," and (2) any "special circumstances that might justify an

exception."  *Id.* at 20.

### c.      Exclusion of Francis's Statement

The evidence in question was excluded on the ground that it was hearsay, not subject to

any exception.  It is certainly true that the statements were hearsay; petitioner sought to

introduce, for their truth, Francis's out-of-court statements about how Jones was killed.

Petitioner has consistently insisted that the statements qualified for a hearsay exception as declarations against penal interest.  To qualify for this exception under Massachusetts law, a three-part test must be met.  First, the declarant's testimony must be unavailable. *Commonwealth v. Hearn*, 31 Mass. App. Ct. 707, 711 (1991).  Second, the statement must "so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true."  *Id.* (internal quotations omitted). Third, if the statement is offered to exculpate the accused, it must be corroborated by circumstances clearly indicating its trustworthiness.  *Id.*[2]

The first part of the test is clearly met; Francis could not be compelled to testify.  As to the second part, this Court sees no reason to upset the state courts' conclusion that the statements do not qualify.  As the Appeals Court indicated, Francis claimed that one of the victim's friends initially pointed the gun at him and Hodge, and that the gun discharged accidentally during a struggle.  If taken as true, the killing was accidental, and thus the statement would not likely subject Francis to liability for any crime.  The statement therefore fails to qualify as a hearsay exception under the second part of the test, and the third part of the test need not be considered. Under Massachusetts law, therefore, the trial court had a valid basis for excluding the testimony.

### d.    Whether an Exception Is Warranted

Even where there is an adequate state-law basis for exclusion of the evidence, the court must nonetheless determine whether, under the particular circumstances of the case, that

---

[2] The substance of Federal Rule of Evidence 804(b)(3) has been adopted in Massachusetts state proceedings.  *Commonwealth v. Carr*, 373 Mass. 617, 623-24 (1977).

exclusion would produce an unconstitutional result.  *White*, 399 F.3d at 24; *O'Brien*, 453 F.3d at 19-20.  Among the factors bearing on that inquiry are the importance of the evidence to an effective defense, the scope of the exclusion, the evidence's strength and reliability, and the strength of the state's interests in excluding the evidence.  *White*, 399 F.3d at 24; *Fortini*, 257 F.3d at 46.  In the Court's view, the circumstances presented here are sufficiently analogous to *Chambers* and *Holmes* to trigger constitutional protection.

First, the statements (if truthful) were "highly probative" and "absolutely critical to the defense."  *Fortini*, 257 F.3d at 47.  At trial, no eyewitness testified as to who fired the shot. Thus, a critical question presented to the jury was whether Francis or petitioner shot the victim. Francis's statements indicated not only that he was the one touching the gun at the time that it fired, but that petitioner was not even on the bus at the time.  As was the case in *Washington*, the court thus "excluded testimony from an accomplice even though he 'was the only person other than [the petitioner] who knew exactly who had fired the shotgun' and who would have testified that he, rather than the defendant, had fired the fatal shot."  *O'Brien*, 453 F.3d at 20 (quoting *Washington*, 388 U.S. at 16).

Second, the statements were not merely cumulative; they were the only evidence that petitioner could have introduced to support his theory of defense.  In evaluating a trial court's exclusion of defense evidence, the First Circuit has distinguished situations in which a trial court's evidentiary limitation foreclosed the introduction of *any* testimony to support a defendant's theory of defense from those in which a defendant retains an adequate opportunity to present his theory of the case.  *Compare United States v. Mulinelli-Navas*, 111 F.3d 983 (1st Cir. 1997) *and Brown v. Ruane*, 630 F.3d 62 (1st Cir. 2011).  In the analogous context of a

16

defendant's right to effective cross-examination, the First Circuit has cited with approval another

court's assertion that "[t]he key issue is whether the jury had enough information to assess the

defense's theory of the case despite the limits . . . ."  *Brown*, 630 F.3d at 73, citing *United States*

*v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009).

This case presents one of the rare instances in which the trial court's evidentiary

limitation precluded the petitioner from introducing *any* evidence of his theory of defense.

Despite pre-trial motions by both petitioner and Francis to sever their trials, the two were tried

jointly.  Francis chose not to testify at trial, eliminating any possibility that the jury could hear

Francis's version of the events from Francis himself.  Petitioner thus lacked any means other

than the proffered hearsay testimony for putting the exculpatory evidence before the jury.  As a

result, the jury heard no testimony about Francis's statements.

Third, circumstantial evidence suggests that Francis's statements—at least to the extent

that they exculpate petitioner—have sufficient indicia of trustworthiness to trigger the

constitutional protection.  The Court recognizes that such a conclusion appears to be contrary to

that of the state trial and appeals courts, both of which found that the circumstances did not

clearly corroborate the trustworthiness of the statements.  Both state courts, however, conducted

that analysis in the context of evaluating Francis's statements for an evidentiary exclusion;

neither court addressed the federal constitutional implications of their exclusion.  And both

courts relied on the analysis of a defendant's testimony in *Commonwealth v. Hearn*, 31 Mass.

App. Ct. 707, 711 (1991), a case that presented different circumstances than those presented

here.  In that case, as here, the trial court excluded testimony by a defendant that he shot the

victim as the result of an accidental gun discharge.  However, in *Hearn*, there was no dispute that

17

the defendant who made the statement was holding the gun when the victim was shot, a point that is very much disputed in this case. Thus, the statement's only purpose in *Hearn* was to exculpate the declarant.

Here, unlike in *Hearn*, Francis's statements are harmful to Francis's own interests, even if they do not amount to a confession of a crime. While Francis's assertion that the gun discharged by accident is exculpatory, his admissions that he was holding the gun when it fired, and that Hodge was not on the bus at the time, are not. At the time Francis made the statements, the police had decided to release him after charging the petitioner with murder. (8 Tr. 215-217). Thus, Francis's unprompted admission that he, and not petitioner, fired the weapon can hardly be categorized as self-serving. In the days immediately following the incident, Francis made multiple, consistent statements exculpating petitioner. While the statements may not have been sufficiently against penal interest to qualify for the evidentiary exception, they certainly seem to be of the sort that an individual who had been previously arrested and then released for the crime would not be likely to fabricate. Indeed, Francis was subsequently indicted by a grand jury, and made no attempt at any point to repudiate the statements or to implicate petitioner in the crime.

Furthermore, the trajectory of the bullet through the victim provides some degree of corroboration of the statements' reliability. The prosecution elicited testimony, and argued in closing, that the bullet traveled downward from the victim's chest to his back, indicating that the shooter was likely taller than the victim. Undisputed testimony indicated that Francis was several inches taller than the victim; petitioner and the victim were the same height. There is thus objective forensic evidence, introduced by the prosecution, tending to suggest that Francis was the shooter.

18

Fourth, the Commonwealth has not offered sufficiently strong countervailing reasons for excluding the statements.  The principal reason to exclude it—as with any hearsay—is that it is not subject to cross-examination.  That is certainly an important countervailing consideration, and one that should not be dismissed lightly.  But the same might be said about the statements in *Chambers* and *Holmes*.  Furthermore, the evidence at issue in this case is not especially inflammatory or confusing.  Indeed, the prosecution opposed a pre-trial motion by Francis to exclude the statements, and originally intended to introduce the statements in its own case.[3]

Finally, while a court's decision to bar exculpatory hearsay evidence certainly cannot be said to be "arbitrary" or "disproportionate to the purposes that [the evidentiary rules] are asserted to promote" as a general rule, *Holmes*, 547 U.S. at 326, the complete exclusion of Francis's statements does strike this Court as disproportionate under the circumstances.  Their exclusion infringed upon petitioner's ability to defend against a charge carrying a possible life sentence in prison, and thus unquestionably interfered with "a weighty interest of the accused."  *Holmes*, 547 U.S. at 325.

Under the circumstances, the exclusion of the evidence appears to present the kind of fundamental unfairness against which the constitutional right to a defense is intended to protect. While this Court is cognizant of the broad latitude provided to state courts to exclude evidence, it nonetheless finds that this case presents the highly rare circumstance where a petitioner has actually demonstrated a serious constitutional deprivation by the exclusion of evidence under the

---

[3] Up until moments before the prosecution rested its case, petitioner's counsel was under the impression, based on representations by opposing counsel, that the prosecution itself intended to introduce the statement. Indeed, petitioner's former attorney, John Cunha—to whom the statements were made—was seated outside the courtroom awaiting his turn to testify.  It was only at a sidebar, during testimony by the prosecution's final witness, that petitioner's counsel was informed that the prosecution would not be introducing Francis's statement, and intended to object to any attempt by the defense to do so.

hearsay rule.  Accordingly, the Court finds that the exclusion of Francis's exculpatory statements violated petitioner's right to have a "meaningful opportunity to present a complete defense." *Holmes*, 547 U.S. at 331.

### C.  Harmless Error

Having found a constitutional violation, this Court must next determine whether the resulting error was harmless.  As set forth by the Supreme Court, the test is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  The prosecution bears the burden of establishing harmlessness. *Sinnott v. Duval*, 139 F.3d 12, 15 (1st Cir. 1998) (citing *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  When a habeas proceeding leaves a court "in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." *Sanna v. DiPaolo*, 265 F.3d 1, 14 (1st Cir. 2001).

Here, the Commonwealth contends that the error was harmless because "Francis's self-serving statements . . . would likely have carried little weight with the jury, especially in light of the strong evidence that the two acted together in the commission of the crimes charged." (Resp.'s Opp. Br. at 12).  In support of this contention, the Commonwealth quotes, without further explanation, the Appeals Court's characterization of the eyewitness testimony.

Although the question is close, this Court does not share the Commonwealth's confidence that the evidence of petitioner's guilt was so strong that the excluded statements would not have altered the jury's deliberations.  It is certainly the case that petitioner and Francis were on the bus together, and that at least one eyewitness watched them pass a knife between them.  An eyewitness also testified that she heard petitioner make certain statements, such as "I

should shank him up," that indicate that he was likely contemplating a violent action against someone.

However, Jones was not stabbed to death; he was shot. The Commonwealth's evidence that petitioner and Francis acted together in shooting Jones was not overwhelming. At least one witness testified that Francis pulled the gun out right before Jones was shot. No one testified as to who shot the gun, and the Commonwealth's medical expert introduced evidence suggesting that Francis was the more likely shooter.

In this context, the decision to exclude Francis's statements cannot be considered harmless to petitioner's defense. Even if the jurors were not disposed to believe the statements' self-serving implications—namely, that Francis was acting in self-defense and did not intend to shoot Jones—they could nonetheless credit the testimony that petitioner had exited the bus prior to the shooting, and was not involved.

To be clear, the Court expresses no view as to Hodge's actual guilt or innocence. There was certainly evidence tending to prove his guilt, including the testimony of an eyewitness that he tucked a gun inside his waistband or pants pocket immediately after the shooting. And, of course, the jury would have been free to discredit Francis's statements in their entirety. The issue, however, is not whether the jury should have believed the additional evidence, but whether it should have heard it.

In any event, this Court has serious doubts that the exclusion of Francis's statements did not have a substantial and injurious effect on the jury's verdict. There is no dispute that the statements went to a critical question in the case, and there is no suggestion that the evidence sought to be introduced would have been cumulative. *See Delaware v. Van Arsdall*, 475 U.S.

673, 684 (1986).  Although it is unquestionably a close call, the government has not met its

burden of convincing this Court that the error was harmless.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, the petition for a writ of habeas corpus is GRANTED.  The

petitioner is to be released from custody unless the Commonwealth moves to retry him within 60

days from the entry of judgment, or such other time as may be set by order of this Court or other

court of competent jurisdiction.

**So Ordered.**


/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  June 14, 2013