1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
2

3    IVAN HODGE,                        )
                                        )
4                   Petitioner          )
                                        )
5         -VS-                          )  CA No. 12-10676-FDS
                                        )  Pages 1 - 25
6    ANTHONY MENDOSA,                   )
                                        )
7                   Respondent          )

8

9                          **HEARING**

10        BEFORE THE HONORABLE F. DENNIS SAYLOR, IV
                 UNITED STATES DISTRICT JUDGE
11

12

13

14

15                          United States District Court
                            1 Courthouse Way, Courtroom 2
16                          Boston, Massachusetts  02210
                            February 11, 2013, 10:49 a.m.
17

18

19

20

21

22                     LEE A. MARZILLI
                   OFFICIAL COURT REPORTER
23             United States District Court
               1 Courthouse Way, Room 7200
24                  Boston, MA  02210
                    (617)345-6787
25

1    A P P E A R A N C E S:

2

3         MICHAEL D. CUTLER, ESQ., 130 Prospect Avenue,
     Northampton, Massachusetts, 01060-1628, for the Petitioner.

4         JESSICA VINCENT BARNETT, ESQ., Office of the Attorney
     General, Criminal Bureau, Appeals Division, One Ashburton
5    Place, 19th Floor, Boston, Massachusetts, 02108, for the
     Respondent.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

1

2      THE CLERK:  Court is now in session in the matter

3  of Hodge v. Mendosa, Civil Action No. 12-10676.  Counsel,

4  please note your appearances for the record.

5      MR. CUTLER:  Michael Cutler, your Honor, for Ivan

6  Hodge.

7      MS. BARNETT:  This is the Attorney General,

8  Jessica Barnett, on behalf of the respondent.  Good morning,

9  your Honor.

10      THE COURT:  Good morning.  All right, I

11  apologize -- please be seated -- that we're starting late.

12  If you've been outside, as I'm sure you have, the driving

13  conditions are horrible.  I had a doctor's appointment, and

14  it took me about an hour and ten minutes to go about three

15  miles.  So, anyway, here I am.

16      All right, this is a hearing on petitioner's

17  habeas petition.  Mr. Cutler?

18      MR. CUTLER:  May I proceed, your Honor?

19      THE COURT:  Yes.

20      MR. CUTLER:  Your Honor, present with me in the

21  courtroom today is Ivan Hodge's family, his parents and his

22  siblings; and also present today, taking time out of his

23  busy practice, is Jeff Palmer, who was the trial lawyer back

24  in this case.

25      Your Honor, Ivan Hodge asks this Court to relieve

1    the unjust deprivation at the state court level of his

2    constitutional right to a complete defense.  In a case where

3    his primary defense, his co-defendant's exonerating admission,

4    was forensically corroborated and corroborated by many

5    witnesses, that suppression of that crucial defense was unjust.

6    And the injustice is demonstrated in this case procedurally by

7    the prosecution's success pretrial in opposing the suppression

8    of this case and arguing its trustworthiness at that level,

9    including the summonsing at trial of the admitting witness, and

10   then cynically seeking to suppress and successfully doing so at

11   trial, flip-flopping and arguing that now it was somehow

12   untrustworthy, and thereby eviscerating the heart of this

13   defense.  And this is a case, I would suggest, your Honor,

14   where the evidence of guilt was far from overwhelming, and

15   where the injustice is further demonstrated by the state

16   appellate court's inexplicable statement that the trial lawyer

17   somehow failed to properly object in this case.

18        THE COURT:  Which for me is the single biggest

19   difficulty for me.  I mean, they seem to say that it's

20   procedurally defaulted, that it wasn't raised, and that seems

21   to me to be clearly wrong, frankly.  I've got the transcript.

22   I read it.  I think that's wrong.  It was raised.  But how do I

23   deal with that exactly?  It's a state court finding of default

24   on a state procedural ground that seems to me to be erroneous.

25   How do I get over that hurdle?

1          MR. CUTLER:  Well, your Honor, there is plenty of

2    precedent for exactly reversing that conclusion.  As a matter

3    of fact, at the U.S. Supreme Court level, you've got the 2003

4    cases of *Miller-El* and *Wiggins* where exactly that scenario was

5    presented at the Federal Court level and where the Federal

6    Court took action to reverse that conclusion.  And here at the

7    Circuit Court level, the First Circuit, your Honor, you've got

8    the *Norton* case of '04 and the *Lanigan* case of '88 which give

9    you the authority to reach that.

10          Your Honor, I've got about five points that I'd like

11    to make, and I --

12          THE COURT:  I'm sorry, I didn't mean to throw you off.

13          MR. CUTLER:  No, no, your Honor.  I appreciate your

14    questions.  They're far more important than my argument.  I'm

15    just going to touch on the weakness of the inculpatory case,

16    your Honor, the trustworthiness and the corroborated nature of

17    the excluded admission, that the suppression of this admission

18    constitutes a clear violation of the constitutional right to a

19    complete defense.  Perhaps I'll not even touch on the argument

20    because we've just had the discussion about your authority to

21    reverse a clearly erroneous conclusion by the appellate court.

22    And then the last point that I'd be making, your Honor, this is

23    not a harmless error situation by any stretch.

24          With regard to the weakness of the prosecutor's case,

25    your Honor, I would again point out that there is no eyewitness

1    to the shooting in this case.  It was an indisputably unplanned

2    confrontation with the victim.  There is no evidence of any

3    joint plan prior to the victim's arrival, and all of the

4    witnesses agree that mere seconds -- and that's a quote, your

5    Honor -- passed between the victim's arrival on the scene and

6    the shot being fired.

7         The witnesses on the bus, your Honor, they contradict

8    each other dramatically.  Vasquez says she saw Mr. Hodge

9    outside the bus when the shot was fired.  Other witnesses say

10   there was a knife involved.  No knife was ever used on the

11   victim.  Some saw the co-defendant Francis with the gun,

12   identified Francis as the shooter on the night of the shooting.

13   The next day one of the witnesses was unsure which one had the

14   gun the afternoon of the shooting.

15        The police reported on the scene a statement.  An

16   admission by the co-defendant was completely consistent with

17   the suppressed statement.

18        You've got the gunshot residue forensic evidence, your

19   Honor.  It was found on the victim, but Hodge's clothing was

20   tested, and there was none found on him.  Francis, the

21   co-defendant, was released the night of his arrest, and his

22   clothing was never tested.  The medical examiner testified to

23   the trajectory of the bullet, which is entirely consistent with

24   much taller Francis doing the shooting as it went down through

25   the victim's body and completely inconsistent with Mr. Hodge

1  being the shooter.  And this was mentioned, by the way, in the

2  prosecutor's close.  He felt it was that meaningful a point.

3         And another point to make, you asked about the state

4  court's fact-findings and their impact on you, your Honor.  In

5  terms of the weakness of the prosecution's case, it's important

6  to understand that the summary of the facts that appears in the

7  appeals court decision was in response to a directed finding

8  motion, your Honor.  So they were marshaling only the

9  inculpatory evidence, and it just is not a basis, I would

10  respectfully suggest, for your determining that the evidence of

11  guilt was overwhelming.

12         Let me move on now, your Honor, to talk about the

13  trustworthiness and the reliability of this excluded

14  exonerating admission.  It's been corroborated that Francis

15  fired the gun by the gunshot residue and by the medical

16  examiner's bullet trajectory evidence.  It's corroborated by

17  much of the witness testimony.  It was established at the

18  pretrial level that it was trustworthy when the suppression was

19  denied by the motion brought by Francis's counsel.  It was

20  consistently repeated by Francis to each of the suppressed

21  witnesses at several different conclusions, and he even went

22  through the process, your Honor, of physically demonstrating

23  how it happened to Jack Cunha.  And to call Jack Cunha a

24  non-trustworthy witness, one of the leaders of the

25  Massachusetts criminal defense bar, I just think is not the

1  kind of a conclusion that should control your assessment of

2  these facts, your Honor.

3       Let me move on to talk about the clarity of the

4  violation in this case.  Let me just touch on the standard of

5  review issue, your Honor, whether it's a de novo decision for

6  you to make or whether you need to defer to the state appellate

7  court.  The issue was simply not addressed at the state court

8  level by either the appeals court or the SJC in denying further

9  review.  That means that you have a de novo authority, your

10  Honor, and the First Circuit authority for that is the *Yeboah*

11  case from 2009 and the *Fortini* case from 2001.  These are all

12  cited in my brief, your Honor, but I'm just trying to

13  accentuate that brief for this presentation.

14       THE COURT:  Well, where we have this peculiar

15  Footnote 4 in the appeals court decision which says, "Hodge's

16  argument that the statement should have been treated like

17  third-party culprit evidence does not appear to have been made

18  below.  The analogy is not apt; but even if it were,

19  the exclusion of the statement created no substantial risk of a

20  miscarriage of justice," does that address it or not?

21       MR. CUTLER:  Well, really, your Honor, I gave you the

22  citations that give you the power to essentially overturn that

23  decision, but, your Honor -- and you've read the transcript,

24  Volume 9 at Page 154 -- Attorney Palmer stated, "It's

25  unavoidable in this case to properly represent my client not to

1   suggest that the co-defendant Francis was the culpable one,"

2   and then he cited the *Chambers* case, your Honor, which is the

3   seminal case for my client's claim here.  It's just not a

4   binding -- if the appeals court gets it wrong, that should not

5   tie your hands in addressing the constitutional violation,

6   particularly where --

7           THE COURT:  But it still leads to the question again,

8   is it de novo review or not?

9           MR. CUTLER:  I would say it is de novo because they

10  failed to address it, not only because they failed to deal with

11  it on the merits, but even by virtue of the court's failure,

12  doing it by way of waiver, there is precedent in the Seventh

13  Circuit's 2011 *Sussman* case and in the 2012 Sixth Circuit

14  *Rainer* case for treating that flawed procedural violation as

15  giving you de novo authority to address the merits.  So the

16  case law I think is reasonably clear that you have the

17  authority to not be bound by an erroneous misstatement of the

18  trial court record, which I think is clearly the case here.

19          But even if, your Honor, you choose to adopt a

20  deferential standard, we still have clear unreasonableness

21  here, where the suppression was dead wrong as a matter of state

22  law and where the exclusion is so arbitrary as to be

23  indefensibly unreasonable because the circumstances of the

24  exonerating admission are indisputably trustworthy and

25  corroborated, because it was absolutely critical, it was the

1  heart of Hodge's defense in this case, and where third-party

2  culprit evidence is core to the constitutional right to a

3  complete defense; and there's nothing about this admission that

4  was speculative, collateral, or unfairly prejudicial to the

5  prosecution.

6       I would first touch on the wrongness of this decision

7  as a matter of state court law, your Honor.  I've cited you the

8  *Drew* case from the SJC in 1986 which is directly on point, and

9  it cites the federal case law that supports my client's claim

10 here, the *Fiore* case, a state appeals court case of 2001, the

11 *Weichell* case, an SJC case from 2006, recently cited last year

12 by the *Nutbrown* case in the appeals court where statements like

13 this should be admitted, quote, "if some reasonable likelihood

14 exists that the statement could be true," and that's completely

15 clearly what's at stake here.

16      THE COURT:  Although, of course, I don't decide state

17 law issues.  The question is, did an exclusion violate the

18 Constitution?

19      MR. CUTLER:  And that's where we come to the U.S.

20 Supreme Court articulation of the U.S. constitutional law in

21 this case in the *Holmes* decision of 2006, in the *Rock* decision

22 of 1987, and the *Chambers* decision of 1973, which

23 Attorney Palmer explicitly cited when making his argument to

24 the trial court.  Third-party culprit evidence is core to this

25 constitutional right claim, and the exclusion was arbitrary and

1  unreasonable because of the suppressed statement's value to the

2  defense and its corroboration, and the disproportionate values,

3  insufficient values served by exclusion.  This clearly was

4  against the defendant's penal interest in terms of determining

5  its reliability.  He was released.  The confession came out.

6  Francis was indicted.

7         Secondly, there is no risk of speculative collateral

8  impact or prosecution prejudice because up until the end of the

9  prosecution's case, they were fighting to use this statement;

10  so you'd be hard pressed, I would suggest, to find that this is

11  a collateral statement, and therefore it fits squarely within

12  the constitutional conclusions of *Holmes*, *Rock*, and *Chambers*.

13         And, your Honor, with regard to this federal

14  constitutional entitlement and the facts that support that

15  entitlement in this case, I think the two cases that the

16  respondent has cited, the *Santiago* case and the Marshall case,

17  First Circuit cases both, clearly come to the benefit of Ivan

18  Hodge in this case.  In the *Santiago* case, the declarant was

19  the defendant's friend.  Here we have a career professional,

20  Jack Cunha, and a physical demonstration of what happened.  In

21  the *Santiago* case, the statement was completely uncorroborated.

22  In this case you've got forensic corroboration and multiple

23  witnesses corroborating it.  In the *Santiago* case, the evidence

24  of guilt was overwhelming.  In this case there were no eye

25  witnesses.  Similarly with the Marshall case, the reliability

1   factor in that case was, again, a completely uncorroborated

2   statement.  Here we have multiple corroboration.  There the

3   materiality of the statement that was excluded was completely

4   collateral to the offense.  Here it's a statement by an eye

5   witness, the only eye witness to the offense.

6        What I think is really useful to this Court is the

7   *Marshall* court's decision statement about these types of cases.

8   The First Circuit in that case noted that false confessions are

9   not, quote, "quite so improbable as once thought.  Thus, the

10  exclusion of powerful --" and I editorialize, "exculpatory,"

11  and back to the quote -- "evidence, on dubious grounds in a

12  close case, prompts --" and I insert "federal" -- "scrutiny

13  even in an area largely governed my state law."

14       So I think, your Honor, *Marshall* recognizes that

15  despite the fact that this was a state evidentiary law

16  decision, that the Federal Courts have the power to protect

17  federal rights when that decision is so arbitrary to the

18  purposes of the rule and so damaging to the heart of the

19  defense and where the evidence that was excluded is clearly

20  trustworthy and corroborated, that it should not be a bar to

21  this Court doing justice in this case.

22       We've talked about the procedural default issue, and

23  I've cited both the text of -- well, what Jeff Palmer said at

24  trial:  "It's unavoidable in this case to properly represent my

25  client not to suggest that Mr. Francis was the culpable one,"

1    and then he cites *Chambers*.  I don't know how much more

2    explicit a lawyer could be, given these facts, and I've given

3    you the precedent cases that give you the authority to overrule

4    Footnote 4.

5          Even if you find there's been default, your Honor,

6    that can be excused by a finding of ineffectiveness based on

7    the *Coleman* decision from the U.S. Supreme Court and the First

8    Circuit cases of *Lynch* and *Horton*, which the respondent also

9    cites; and certainly it would be a miscarriage of justice if

10   this exclusion of the trustworthy evidence of the defendant's

11   innocence, of Mr. Hodge's innocence would be upheld.

12         My last point, your Honor, would say that this is not

13   a harmless error situation.  First of all, once you find error,

14   the burden of proof for proving that the error was harmless

15   shifts to the respondent, and that's the *O'Neil* decision from

16   1995.  The forensic corroboration of this evidence in a case

17   where nobody saw the shooting and where there's conflicting eye

18   witness testimony, the gunshot residue evidence, this was

19   clear, powerful evidence that the defendant was unable to use

20   and Mr. Palmer was unable to use in his closing.

21         The excluded admission witnesses, a series of them,

22   were central to Mr. Hodge's defense.  This ruling denied him

23   his best witnesses, and the reporting of this consistent

24   voluntary set of admissions with no alternative evidence, no

25   alternative way to get this evidence in, just cut the core out

1  of his case.

2       Your Honor, my state post-conviction advocacy did not

3  remedy this injustice, and this injustice is now before you

4  today.  I implore you to recognize and apply the federal

5  precedents that give you the power to enforce this victim's

6  constitutional rights.  I ask you to do justice by my client's

7  unfair and illegal deprivation of his constitutional right to a

8  complete defense by the exclusion of reliable evidence of his

9  innocence in a weak inculpatory case resulting in a life

10  sentence.

11       Your Honor, I ask to reserve some time for rebuttal

12  argument.  Thank you.

13       THE COURT:  All right.  Ms. Barnett?

14       MS. BARNETT:  Thank you, your Honor.  Co-counsel has

15  just stated, if the state court is in error, this should not

16  tie this Court's hands.  Unfortunately, as this Court knows, in

17  the habeas context, this Court's review is limited in many

18  ways.  The first among those is that this Court, as your Honor

19  has acknowledged, does not review issues of state law.  So the

20  procedural default is one example of that.  Here the appeals

21  court noted petitioner's argument, that he is saying these

22  statements should have been admitted as evidence of third-party

23  guilt, but in the Footnote 4 that has been the subject of much

24  discussion this morning, they said the analogy is not apt, and

25  that even if it were --

1          THE COURT:  Why is it an analogy?  I guess that's one

2     of the words I don't understand.  You said it should have been

3     treated like third-party culprit evidence.  Isn't it

4     third-party culprit evidence?  I mean --

5          MS. BARNETT:  It's being presented by petitioner as a

6     confession of a co-defendant.  I think that description is not

7     quite accurate.  The statements in fact minimized both of their

8     roles in the crime, and perhaps that's what the appeals court

9     was getting at.  You know, this is not *Chambers*.  This is not a

10    confession to the crime to different people directly after the

11    incident occurred.  This is someone making statements to his

12    co-defendant's counsel and family members that minimized both

13    their roles, and in fact said, "This wasn't our fault at all.

14    These people came at us with a gun."  So this was not a

15    confession to a crime, nor a statement against penal interest

16    in the truest sense, and I think the appeals court was correct

17    in that way.

18          But whatever our feeling about whether they correctly

19    perceived it as procedurally defaulted, that is a state law

20    issue, and they very clearly did treat it that way as they

21    applied the substantial risk of a miscarriage of justice

22    standard which is applicable to waived claims.  So I don't

23    believe that the cases cited by petitioner's counsel allow you

24    to step around that procedural default.

25          Even where the state court is in error on an issue of

1   state law, this Court may not review it.  The cases in which

2   procedural default has been sort of sidestepped would be cases

3   in which the rule that the state court is relying on is one

4   that's perhaps not consistently applied and not a real basis

5   for a default.  That's not the case here.  The contemporaneous

6   objection rule is certainly well and consistently followed in

7   Massachusetts state courts.

8        THE COURT:  Is it your position that there was no

9   contemporaneous objection?

10       MS. BARNETT:  I believe that the court was

11  distinguishing between an objection as to the hearsay

12  admissibility and an objection regarding the right to present a

13  defense as now crafted here and on appeal in the state courts.

14  I believe that they were making a distinction between the legal

15  grounds for the objection, and that's how I understand

16  Footnote 4.

17       THE COURT:  Well, let's go back to the trial.  Are you

18  saying that trial counsel did not properly preserve the issue

19  at the trial, did not make a contemporaneous objection?

20       MS. BARNETT:  I guess what I'm saying, your Honor, is

21  that was the state court's conclusion, and it's not reviewable

22  here.

23       THE COURT:  No matter what the record says to the

24  contrary?  I mean, suppose there's literally no ambiguity.

25  Suppose the record says, trial counsel says, "I object on

1    ground X," and the appeals court says, "There was no evidence

2    that ground X was raised," and it's a federal constitutional

3    issue, there's nothing I can do about that?

4         MS. BARNETT:  I know it's something we all struggle

5    against in advocating for these cases on habeas review, but,

6    yes, your Honor, you are limited.  You may not review an issue

7    of state law.  When it comes to the federal issue --

8         THE COURT:  Was the federal issue raised here?  He did

9    say *Chambers*, correct?  That's a federal case.

10        MS. BARNETT:  The federal issue we -- it's been well

11   exhausted at every level.  We're not arguing that it wasn't

12   raised by petitioner.  You have the separate question of the

13   procedural default, which, as I've stated, bars this Court's

14   review.  But no question, it has been argued up the line; it is

15   exhausted.

16        Now, when you get to a federal issue, of course, there

17   are outlets.  You know, unreasonable factual determinations can

18   be a grounds for allowing review, habeas relief on a claim.

19   But, again, the state law issue aside, if you're getting to

20   then -- if the Court were able to reach around, which again I

21   assert it is not, but I have argued the merits of the federal

22   claim, if nothing else, to provide some comfort in saying that

23   this procedural default, it's not going to change the outcome

24   here because if this Court were to reach the issue and review

25   it, either under the AEDPA standard or on a de novo standard of

1  review, the result would be the same.

2       THE COURT:  Because the evidence was overwhelming?

3  That's your position?

4       MS. BARNETT:  Not just because the evidence was

5  overwhelming.  Firstly, I believe that the appeals court's

6  decision was in line with *Holmes*.  So, again, *Holmes* has very

7  different facts from the case here.  In that case, South

8  Carolina applied a rule where a defendant could not admit

9  evidence of third-party guilt based on the strength of the

10  prosecution's case, and not taking into account at all the

11  probative value of the evidence, its possible prejudicial

12  effect.  That's not the Massachusetts rule.  Massachusetts was

13  applying its well-established hearsay rules, which comport with

14  the federal guidelines under the precedent regarding a right to

15  present a complete defense.  The court assessed it as hearsay,

16  concluding it was not a statement against penal interest for

17  the reasons that I spoke of before; it did not fall within the

18  exception, and, again, the circumstances didn't provide

19  assurances of trustworthiness.

20       Now, I think there's some confusion.  We're not

21  calling into doubt the testimony of Attorney Cunha or the

22  testimony of petitioner's family members that these statements

23  were made.  The question is, do those statements themselves

24  have indicia of reliability?  And they don't, again, because

25  they minimized the role of both petitioner and his

1    co-defendant.  That is not what a statement against penal

2    interest is about.  Quite the opposite.  It's where someone is

3    exposing themselves to criminal liability in circumstances

4    where, you know, they would understand the consequences would

5    be quite grave.  You know, here he's telling these people,

6    "Yes, petitioner had nothing to do with it, and I wasn't at

7    fault either.  It was the other guy."

8            So, you know, I've cited a couple of cases that I

9    found similar, *Santiago* in particular.  That was a cocaine

10   trafficking case.  They excluded testimony of defendant's

11   friend that the drugs belonged to another person, who at that

12   point had passed away.  This was a confession in the truest

13   sense.  This person purportedly had said, "Those were my drugs,

14   not his."  But that defendant was not allowed to present that

15   evidence because, again, the statement did not fall into the

16   exception of a statement against penal interest.  It was made

17   in private to the person's brother.  And the First Circuit

18   upheld that and said, you know what, this was not unreasonable

19   for the state court to exclude this evidence despite the fact

20   that it was clearly exculpatory of the defendant in that case.

21   It was a confession by another person.  But where it doesn't

22   fall within the hearsay exception and there aren't those

23   indicia of reliability, state courts do have a fair amount of

24   leeway, even under *Holmes* and the related precedent, to apply

25   these well-established rules that are there for a reason.

1          You know, I think ultimately, when you get to the

2  prejudice prong, again, I don't think we get past step one, but

3  if we get to step three, the exclusion of this evidence did not

4  have a substantial injurious effect on the verdict.  You know,

5  there was plenty of evidence.  Again, yes, witnesses do not all

6  testify exactly consistently with one another, but there was

7  plenty of evidence that these two individuals were on the bus.

8  They were discussing with each other.  There was evidence that

9  a knife was passed back and forth, potentially to allow

10  petitioner to put gloves on and then take the knife back.  He

11  was heard to say, "We could get him now.  Why wait?  What are

12  we waiting for?  I should shank him up."  You know, this is not

13  challenged here.  There was certainly sufficient evidence to

14  convict this petitioner, and these statements, which, again,

15  were made by a friend minimizing both of their role in this

16  crime, that would not have changed the jury's mind.

17          And unless your Honor has further questions, I would

18  rest on the brief for the remaining arguments.

19          THE COURT:  Let me hear from Mr. Cutler.  Thank you.

20          MR. CUTLER:  Just three quick points, if I can, your

21  Honor.  Just, first, with regard to the waiver issue, I think

22  my sister is making my point with regard to the distinction

23  between the hearsay and the right to the complete defense.  The

24  right to the complete defense issue was directly before the

25  trial judge with regard to the *Chambers* citation, so I think

1   that that truly covers it, your Honor.  And, in any event, if

2   you think that there was waiver, we do have an ineffective

3   assistance and a miscarriage of justice standard, which goes to

4   the third point that I'm about to make, your Honor.

5          The second point, your Honor, I would make is with

6   regard to whether this is against interest.  Your Honor, the

7   clear facts of this case, indisputable on this record, are that

8   Mr. Hodge was detained and Mr. Francis was released on the

9   night of their arrest, the night of the shooting.  Mr. Francis

10  made this confession to Mr. Cunha.  The prosecution used that

11  confession as the basis for his indictment.  They then

12  subpoenaed Mr. Cunha to the hearing, kept him there throughout

13  the direct case; and only at the conclusion of the 20th witness

14  in this case, your Honor, they decide, "Well, we changed our

15  mind.  We're not going to use this admission anymore."

16         The idea that that admission was not against interest,

17  given those facts, your Honor, I think just is against reality,

18  and I would urge you not to accept that conclusion, which

19  enables you to find that this was an arbitrary exclusion.

20         The last point, your Honor, that I would make to you

21  is, in this case -- and I understand the minimization argument

22  that my sister has made -- but in this case where this witness

23  said, "The gun was introduced by the other party, I put my

24  hands on it, I fired the gun, Mr. Hodge was off the bus when

25  the gun went off," and at least one other witness corroborates

1   that, the idea that that eye witness testimony did not come

2   into this case...

3           THE COURT:  All right.

4           MR. CUTLER:  ...the fact that that eye witness,

5   exculpatory, exonerating evidence did not come into this case

6   makes it hard to understand how that could be determined to be

7   harmless in these facts, in these conflicting facts.  Those are

8   the three points that I would make in conclusion, your Honor.

9           THE COURT:  All right, Ms. Barnett, what about this

10  business of the fact that the government intended to call

11  Attorney Cunha?  What am I to make of that?  In other words,

12  they thought it was sufficiently trustworthy that they, at

13  least for some stretch of time, were intending to call him as a

14  witness, although they changed their mind.  Doesn't that cut

15  against the idea that it's untrustworthy at a minimum?

16          MS. BARNETT:  I don't know that they thought it was

17  trustworthy.  I know that they did believe it was a voluntary

18  statement.  And that certainly was litigated.  I don't know if

19  that was their intent to call him for just that purpose and

20  against which defendant and so on because certainly, you know,

21  admissions of Francis might be admissible against him.

22  Honestly, I can't speak to what the prosecutor was doing in the

23  moment decision about, do we call this witness or not?  But I

24  think that goes to the point that, you know, these statements,

25  they were analyzed under so many different lenses:  Was this a

1  voluntary statement as to Francis?  Was this hearsay when

2  offered by Hodge?  So the Court is being asked to perform a lot

3  of different analyses, and, one, they are not identical.  So to

4  the extent the defense attorney felt that this was essential

5  evidence to the defense, you know, perhaps this should have

6  been examined through a motion in limine as evidence that would

7  be offered by Hodge.

8       So we're not here to second-guess the defense

9  attorney's decision, nor the prosecutor's decision in that

10  respect.  I think, you know, again, we're faced with a pretty

11  straightforward question of procedural default here, and, you

12  know, again, I argue the merits simply to show that it would

13  not change the result were your Honor to reach them.

14       THE COURT:  The Supreme Court requires the state court

15  to have clearly expressed that its judgment rests on a

16  procedural bar.  Does Footnote 4 qualify?  Is that clear

17  enough, as opposed to a passing reference?

18       MS. BARNETT:  Yes, your Honor, absolutely.  I think

19  it's been discussed in the First Circuit cases.  You know,

20  where the state courts in Massachusetts apply this substantial

21  risk of a miscarriage of justice standard, that is the typical

22  expression of reviewing a waived claim.

23       THE COURT:  All right, anything further, Mr. Cutler?

24       MR. CUTLER:  Merely, your Honor, that just with regard

25  to what my sister just said, this evidence, there was no reason

1    for any pretrial in limine pleading by Mr. Palmer because

2    Mr. Cunha was on the prosecution's witness list.  In fact, the

3    in limine hearing was held in the prosecution's effort to

4    exclude this, so I just want to make that clear about the

5    process in this case.

6          Secondly, your Honor, I'd make the point that your

7    ability to reach behind the erroneous statement in Footnote 4

8    that there was waiver in this case is supported by the First

9    Circuit cases of *Norton* and *Lanigan* and the Supreme Court cases

10   of *Miller-El* and *Wiggins*.  You just don't have to accept that

11   conclusion, your Honor, where clearly the state appellate court

12   was dead bang wrong in this case.

13         And, lastly, your Honor, I would just close on talking

14   about the last point that I made, which was that the error in

15   this case eviscerated the heart of the defense, and it is not

16   an overwhelming facts case, and that justice requires that

17   relief should be done in this case, clearly, your Honor.

18         THE COURT:  All right, I'm going to take it under

19   advisement.  I certainly understand the basic principles that I

20   don't sit as some kind of super-appellate state court; that

21   unlike the way so many federal judges viewed their role in the

22   past, I don't get to reverse something from the state court

23   simply because I thought I might have done it differently.

24   There are rules that have to be followed, and I'm going to

25   follow them, but I'm very much troubled by this.  That doesn't

1   mean necessarily that the petitioner wins.  I'm going to look

2   at it carefully and think about it at some length, but I do

3   find the situation troubling, and I am going to take a careful

4   look at it.  And I will, of course, be duly deferential to the

5   state court system, which I very much respect, to the extent

6   that I need to do so.  But, again, I do find this to be a

7   troubling situation.  So I will look at it carefully and render

8   my decision as quickly as I can under the circumstances.

9            MR. CUTLER:  Thank you, your Honor.

10           THE COURT:  And again I apologize to everyone for

11  starting late.  Thank you.

12           MS. BARNETT:  Thank you, your Honor.  Thank you,

13  Mr. Clerk.

14           (Adjourned, 11:25 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS     ) ss.
   CITY OF BOSTON                )

5

6

7          I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 25 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in Civil Action No. 12-10676-FDS,

11 Ivan Hodge v. Anthony Mendosa, and thereafter by me reduced to

12 typewriting and is a true and accurate record of the

13 proceedings.

14     Dated this 11th day of July, 2013.

15

16

17

18

19          /s/ Lee A. Marzilli

            _____
20          LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER
21

22

23

24

25