# United States Court of Appeals
## For the First Circuit

—————————

No. 13-1825

IVAN HODGE,

Petitioner, Appellee,

v.

ANTHONY MENDONSA, Superintendent,

Respondent, Appellant.

—————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

—————————

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

—————————

Eva M. Badway, Assistant Attorney General, Criminal Bureau,
with whom Martha Coakley, Attorney General of Massachusetts, and
Thomas E. Bocian, Assistant Attorney General, Criminal Bureau, were
on brief, for appellant.
Michael D. Cutler for appellee.

—————————

December 30, 2013

—————————

LYNCH, **Chief Judge**. Federal habeas petitioner Ivan Hodge was convicted, along with co-defendant O'Neil Francis, by a Massachusetts jury in March 2007 of second-degree murder of Tacary Jones and another charge, stemming from a March 2005 shooting on an MBTA bus in Boston. Hodge's convictions were affirmed on appeal by the Massachusetts Appeals Court ("MAC") in November 2010. Commonwealth v. Francis, 78 Mass. App. Ct. 1107, 936 N.E.2d 453 (2010) (unpublished table opinion). The Massachusetts Supreme Judicial Court ("SJC") denied further review in April 2011. Commonwealth v. Francis, 459 Mass. 1110, 947 N.E.2d 42 (unpublished table opinion) (2011). Hodge is presently serving a life sentence for second-degree murder.

In June 2013, a federal district court granted Hodge's petition for a writ of habeas corpus under 28 U.S.C. § 2254. Hodge v. Mendonsa, No. 12-10676-FDS, 2013 WL 3070660, at *12 (D. Mass. June 14, 2013). By placing too much weight on the fact that the MAC opinion did not expressly address by name the federal issue that was raised by petitioner at trial and in his habeas petition, it reached the merits of the petitioner's arguments on its own, without the deference to the state court decision required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

The parties in this habeas case have characterized it as presenting a procedural bar issue of whether the MAC permissibly

found petitioner had waived constitutional objections to the exclusion of evidence under Chambers v. Mississippi, 410 U.S. 284 (1973), by not presenting those objections at trial.  The MAC did not expressly discuss the Chambers argument by name in its opinion.  But we view it as having nevertheless rejected the argument on the merits because it expressly rejected the indicia of reliability and trustworthiness that would at a minimum be required in order to advance a successful argument under Chambers and cited a state case, Commonwealth v. Hearn, 31 Mass. App. Ct. 707, 583 N.E.2d 279 (1991), which discussed and rejected Chambers claims.  As a practical matter, this reading particularly makes sense because, were we not  to adopt such a reading, the presumption that we would be required to draw under Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013) would lead us to the same point.  The MAC's conclusion was neither an unreasonable application of nor contrary to Chambers.  28 U.S.C. § 2254(d)(1).

In addition, to the extent the MAC found in a footnote that petitioner asserted on appeal a new third-party culprit theory of admissibility for this same evidence and that it was never raised in the trial court, we find that review of the third-party culprit theory is procedurally barred.  Accordingly, the grant of the petition for habeas corpus relief is reversed.

I.

A.      Factual Background

-3-

On March 18, 2005, Jones, having just boarded an MBTA bus in the Dorchester section of Boston, was shot and killed.  Both Hodge and Francis were charged with and ultimately convicted of the second-degree murder of Jones, <u>see</u> Mass. Gen. Laws ch. 265, § 1, and carrying a firearm without a license, <u>see</u> Mass. Gen. Laws ch. 269, § 10(a).  They were tried on a theory which permitted a finding of guilt as either a principal or a joint venturer and both were found guilty on general verdicts.

Jones and Hodge had a history of altercations, having previously been arrested for fighting in the second floor men's restroom of the Dorchester District Courthouse in 2003.

On March 18, 2005, Hodge and Francis were both riding the MBTA bus as it traveled down Columbia Road.  When the bus stopped at its Geneva Avenue stop, Jones boarded through the back door along with around six other young men.  After Jones and his friends boarded, there was an altercation involving Jones, Hodge, and Francis.  Jones was shot and killed.

On habeas review, findings of fact made by a state court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  That presumption extends to findings made on appeal.  <u>Teti</u> v. <u>Bender</u>, 507 F.3d 50, 58 (1st Cir. 2007).  Various eyewitnesses testified at trial.  As required by law, we accept the MAC's statement of the testimony:

> Eyewitnesses testified that [Francis and Hodge] boarded the bus together and sat down

-4-

together. As the bus approached the Geneva Avenue bus stop, witnesses saw Hodge pass a camouflage knife to Francis, who passed it back to Hodge; and, when [Jones] and his friends boarded the bus at that stop, both [Francis and Hodge] got up to exit and confront the victim. Shalonda Smith testified that she heard Hodge say, "[W]e've got that thing," and "[W]e could get him now, why wait, like, what are we waiting for," and "I should shank him up," at which point Francis pulled out a palm-sized gun. Another witness, who was driving directly behind the bus, heard a "loud pop," and saw [Francis and Hodge] standing outside the rear of the bus, smiling and laughing. The same witness also saw Hodge tuck a black, semiautomatic gun into his waistband or pants pocket. [Francis and Hodge] were observed fleeing from the scene together and later were seen running away from the place where the murder weapon was found together with an army knife and clothing matching that worn by Hodge. On the basis of this evidence, a reasonable jury could find that Francis was guilty of second degree murder and unlawful possession of a firearm regardless of who fired the fatal shot.

Francis, 936 N.E.2d at *1.

The trial evidence showed that both Hodge and Francis were detained for questioning shortly after the incident. Hodge made a statement to the police, which was admitted at trial. He initially refused to permit his statement to be tape recorded. Four hours after giving his initial statement, however, Hodge gave a second, recorded statement, which was not admitted at trial.[1] In

---

[1] In the recorded statement, not heard by the jury, Hodge claimed that he heard a shot after he had gotten off the bus. Hodge's recorded statement was deemed inadmissible at trial. The MAC affirmed the trial court's inadmissiblity determination, reasoning that the statement was inadmissible under the doctrine of

both statements, Hodge placed himself on the bus at or around the time of the shooting. Hodge claimed he heard a gun shot. Following the shot, Hodge claimed that he fled the scene, discarding his hat and jacket in the process. Hodge was arrested that night. On March 21, 2005, Hodge was arraigned on a murder charge.

When Francis was interrogated, he refused to make a statement to the police, invoking his right to counsel. Francis was released after questioning. Francis was indicted by a grand jury on May 3, 2005.[2]

B.     Trial Court Proceedings as to Statements by Francis

Hodge and Francis were tried as co-defendants before the Suffolk Superior Court ("trial court"). Before trial, Francis moved to suppress certain statements he had made to members of Hodge's family and to Hodge's attorney, on the grounds they were involuntary. Following a hearing, the trial court denied the motion, finding beyond a reasonable doubt that Francis's statements were voluntary. It is these statements which Hodge now says should have been admitted at trial at his request.

---

verbal completeness. Francis, 936 N.E.2d at *2.

[2]     Francis was indicted after a grand jury heard witness descriptions of a meeting between Francis and Hodge's attorney the day after Hodge's arraignment. Francis's statements to Hodge's attorney were excluded at trial, as discussed below.

Francis's statements as established during the hearing on Francis's motion to suppress were as follows.[3]  On the weekend of March 19-20 after the March 18 shooting, Francis spoke with Hodge's stepbrother, Spencer Gray.  According to Gray, Francis stated that he and Hodge boarded the bus together, having just come from a medical appointment for Hodge.  He and Hodge were riding the bus together when Jones and the other young men boarded and started an argument with him and Hodge.  Francis stated that one of the young men with Jones pulled a gun.  Francis then pulled out his own gun, which, according to Francis, kicked up and fired, hitting Jones in the chest.  Francis said that he did not mean to kill Jones.  Francis also said that Hodge had gotten off the bus before the shooting.  This statement was not consistent with his other statements, as we describe next.

The morning after Hodge's arraignment, Francis, at the urging of members of Hodge's family, met with Hodge's appointed attorney, John Cunha.  Cunha recounted the meeting before the grand jury.  According to Cunha, Francis explained to him, and later to his law partner Helen Holcomb, that Francis and Hodge had attempted to exit the bus when Jones and his associates boarded.  Francis said that Jones and the other young men blocked the doorway, at

---

[3]  The trial court described Francis's statements first in its Memorandum and Order denying Francis's motion to suppress and again in its Memorandum and Order denying both defendants' motion to sever, discussed below.

which point one of the young men pulled a gun and pointed it at
Hodge. Francis said he reached out to grab the gun. After
wresting the gun away, Francis turned and observed Jones, who,
according to Francis, was reaching to his waist. At that point,
Francis claimed, the young man from whom Francis had taken the gun
tried to grab it back. The gun then went off, hitting Jones.
According to Cunha, Francis insisted that his finger was not on the
trigger when the gun fired. As before, Francis claimed that Hodge
had left the bus before the shot was fired.

According to Hodge's counsel's representation to the
trial court, Hodge's mother, Denise Gray, observed Francis speak to
his grandmother after his meeting with Cunha. Francis purportedly
admitted to holding the gun when it went off. Francis insisted to
his grandmother that he had told Cunha the truth.

The trial court denied Francis's motion to suppress these
statements, finding them to be voluntary.

Both Hodge and Francis moved to have the trial severed.
In his motion for severance, Hodge argued, among other things, that
the statements by Francis, which the Commonwealth might introduce
as evidence against Francis, were prejudicial hearsay insofar as
those statements were inculpatory as to Hodge. Hodge reasoned that
Francis's statements were inculpatory as to Hodge because Francis
claimed, for example, to have seen Hodge change his clothes and
"stash" his jacket following the shooting. Following a non-

evidentiary hearing, the trial court denied both motions to sever, reasoning that Francis's statements could be redacted if they were introduced, so as to avoid any prejudicial effect to Hodge.[4]  In the end, the Commonwealth chose not to introduce Francis's statements, although it had initially listed Cunha as a trial witness for the prosecution.

At trial, Hodge, having earlier in the severance proceedings characterized Francis's statements as inculpatory, reversed course.  Hodge sought to introduce Francis's statements to Cunha and to members of Hodge's family as evidence that Francis, not Hodge, was the shooter.  The Commonwealth opposed, arguing that this was inadmissible hearsay and none of Hodge's theories of admissibility applied.  At trial, Hodge's counsel articulated three distinct theories of admissibility.  Hodge's trial counsel argued first that Francis's statements were admissible as statements by an adverse party, reasoning that the interests of the two defendants were adverse for purposes of the trial.  See 9 Tr. 153 ("So first of all it's admissible because it's a -- a statement by a party opponent."); 10 Tr. 60 ("It's a statement by a party which is -- who is adverse to me in this litigation and it's as if -- it's just as if the Commonwealth were trying to introduce this testimony[.]").

---

[4] In his motion to sever, Francis made similar arguments as to certain statements by Hodge not at issue here.  The trial court rejected those arguments on similar grounds.

Hodge's trial counsel argued next that Francis's statements were admissible as statements against Francis's penal interest, reasoning that the statements had been made after Francis had been released from custody and Hodge had been placed under arrest. E.g., 9 Tr. 158 ("[T]he first statement [to Spencer Gray] is absolutely a statement against penal interest. He says, it kicked up, I shot him, and -- and remember this is in the context -- this is the context of everyone thinking that Hodge had been arrested as the shooter.").

Finally, Hodge's trial counsel argued that Francis's statements were admissible as evidence of consciousness of Francis's guilt, reasoning that the inconsistency between Francis's statements somehow showed Francis's awareness that he was the shooter. Id. at 208-09 ("I'm offering it for -- principally for the purpose that . . . it was a patently false statement in view of all the other evidence that you've heard in the case. . . . [T]he story that the co-defendant gives to Cunha is patently false. I -- I will -- in view of all of the other evidence in the case. So . . . what it shows is, it shows consciousness of guilt that he was the one that fired the gun."); 10 Tr. 58 ("I think it's part of a continuum that shows that this particular co-defendant had a guilty mind, which reflects the fact that he was the one that shot the gun.").

-10-

In the course of arguing these theories of admissibility, Hodge's trial counsel cited <u>Chambers</u>. 9 Tr. 212. Hodge's trial counsel explained:

> [T]hat was a case in which a co-defendant had made a confession and the trial judge excluded the confession as hearsay. The confession -- in the confession he exculpated the defendant who was on trial and the princip[le] that I glean from -- from that case and -- and the U.S. Supreme Court reversed the conviction saying state -- state rules on hearsay -- generally we -- we subscribe to state rules on hearsay, but they cannot be used to interfere with a defendant's right to a fair trial. And it seems to me that we're -- we're in that territory here. That . . . to prevent me -- Hodge from getting the statements that this co-defendant made and arguing as I have indicated to the court would in effect deprive him of an effective defense. And you can't use technical rules of hearsay to prevent or to interfere with a defendant's right to a fair trial.

<u>Id.</u> at 212-13.

After hearing testimony from Cunha and Spencer Gray on voir dire,[5] the trial court excluded Francis's statements as hearsay, rejecting each of Hodge's trial counsel's arguments for admissibility. The court rejected the theory that Francis, a co-defendant, was a party opponent. As to the theory that the statements were against Francis's penal interest, the trial court reasoned that the statements were in no way inculpatory as to Francis since Francis characterized the shooting as an accident,

---

[5] The accounts of Francis's statements on voir dire were consistent with pretrial accounts.

and there was no confession.  The trial court ruled: "[A]ccording
to the testimony of Mr. Cunha, there was no crime that Mr. O'Neil
Francis was confessing to or making a statement about."  Id. at
215; see also id. at 209 ("[Francis] said he didn't fire the
gun.").

Beyond that, the trial court reasoned, Francis's
statements were not corroborated by circumstances indicating their
trustworthiness.  It held: "The statement [to Cunha] was made in --
by an 18 year old individual without accompanying family members or
counsel, in the presence of three older members of the co-
defendant's family as well as the co-defendant's lawyer."  Id. at
215.

Last, as to the consciousness of guilt theory, the trial
court reasoned that Francis's statements lacked the indicia of
reliability to be admissible under that rubric.  The court stated:
"Again, it was made to . . . private individuals, indeed the
co-defendant['s] family and counsel, and again I do not see the
circumstances of trustworthiness that would allow the statement,
again, even under a consciousness of guilt theory."  Id. at 216.

The jury returned guilty verdicts against Hodge and
Francis on both charges.

C.      MAC Proceedings

On appeal to the MAC, Hodge argued, among other things,
that the trial court committed reversible error by excluding his

-12-

co-defendant's "credible" "confessions." His brief made an express constitutional argument. Hodge argued that exclusion of Francis's statements "violated [Hodge's] constitutional rights to produce all favorable proofs." Hodge made three arguments concerning Francis's statements: (1) they should have been admitted as statements against penal interest; (2) they should have been admitted as third-party culprit evidence, and (3) even if not otherwise admissible, they should have been admitted as a matter of basic due process because they were "credible confessions" that exculpated Hodge.

The MAC rejected the third-party culprit argument as waived because it was not raised below. <u>Francis</u>, 936 N.E.2d at *2, n.4. It rejected the "against penal interest" argument on the merits by finding that Francis's statements were neither confessions nor otherwise accompanied by indicia of trustworthiness. <u>Id.</u> at *2. The MAC made no express mention of the federal due process argument. It did, however, cite <u>Commonwealth</u> v. <u>Hearn</u>, 31 Mass. App. Ct. 707, 711, 583 N.E.2d 279 (1991), a case in which the court both rejected an "against penal interest" argument and rejected a Chambers due process argument as failing for identical reasons. <u>Id.</u>[6]

---

[6] The MAC also rejected various other arguments by Hodge, none of which are at issue on appeal.

-13-

D.        <u>Federal Habeas Review</u>

          Hodge timely filed a petition for federal habeas relief
on April 16, 2012.  Again, Hodge argued that the exclusion of
Francis's statements violated due process, stating:

> The state trial court's erroneous use of the
> evidentiary rule against hearsay to gut the
> petitioner's only available defense, by
> excluding a powerfully exculpatory and
> corroborated eyewitness exoneration in a weak
> inculpatory case (and the state appellate
> courts' refusals to even address this issue on
> the petitioner's direct appeal), violated the
> petitioner's fundamental constitutional right
> to 'a meaningful opportunity to present a
> complete defense,' as clearly established by
> <u>Holmes</u> v. <u>South Carolina</u>, 547 U.S. 319, 324-25
> (2006).

          On June 14, 2013, the district court issued a Memorandum
and Order on Petition for Habeas Corpus, granting Hodge habeas
relief, and directing that "[t]he petitioner is to be released from
custody unless the Commonwealth moves to retry him within 60 days
from the entry of judgment, or such other time as may be set by
order of this Court or other court of competent jurisdiction."
<u>Hodge</u>, 2013 WL 3070660, at *12.

          Because, in its view, "the substance of petitioner's
federal claim was never addressed by the state courts," the
district court considered Hodge's due process claims de novo.  <u>Id.</u>
at *5-6.  The district court concluded that "[u]nder the
circumstances, the exclusion of the evidence appears to present the
kind of fundamental unfairness against which the constitutional

-14-

right to a defense is intended to protect." <u>Id.</u> at *11.  The
district court rejected the Commonwealth's contention that any
constitutional error committed by the trial court was "harmless."
<u>Id.</u> at *12.

On July 12, 2013, the district court granted the
respondent's motion to stay the June 14, 2013 order pending appeal,
and denied petitioner's motion for release.

II.

We review de novo a district court's decision to grant or
deny a habeas petition under the AEDPA.  <u>O'Laughlin</u> v. <u>O'Brien</u>, 568
F.3d 287, 298 (1st Cir. 2009).

We take this case in two steps.  The first is whether the
MAC in fact addressed and rejected the <u>Chambers</u> claims as made at
trial.  The second is whether footnote 4's holding that the new
third party theory of admissibility had not been asserted at trial
is plausible and so acts as a bar to habeas review of a due process
claim based upon that particular theory of admissibility.

As to the first, the district court correctly observed
that the MAC never stated that petitioner had waived his <u>Chambers</u>
arguments.  This is not surprising given that the MAC addressed the
substance of the admissibility arguments petitioner presented at
trial.  In addition, through its citation of a state case, <u>Hearn</u>,
which discussed <u>Chambers</u> expressly, the MAC made sufficiently clear
it was rejecting the due process claims supported by petitioner's

-15-

admissibility arguments which had been raised at trial. Thus its ruling constituted an adjudication on the merits. We explain more below.

As to the second, the district court correctly observed that the MAC held that petitioner's newly articulated third party theory of admissibility had been procedurally defaulted at trial. Thus, to the extent that petitioner seeks to assert a new due process claim based upon a third-party culprit theory, we hold that the MAC's procedural default holding acts as a bar to that claim only on federal habeas review.

A.     The AEDPA and the Chambers Arguments

The AEDPA sets forth the standards for review of a federal claim "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Under the AEDPA, an application for habeas corpus is not to be granted with respect to such a claim unless the state court's adjudication of the claim either: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.

"In contrast, a state court decision that does not address the federal claim on the merits falls beyond the ambit of

-16-

AEDPA."  Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010).  This court reviews federal claims raised but unadjudicated in state court de novo.  Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006). And where there is no explicit discussion of the articulated federal constitutional issue amidst the discussion of issues in the state court opinion, the federal court must presume the federal claim was adjudicated on the merits.  Johnson, 133 S. Ct. at 1095- 96.

The district court held that the MAC did not adjudicate petitioner's due process claims as presented at trial on the merits.  We disagree.

The fact that the MAC did not expressly cite to Chambers or to Holmes does not resolve the question.  This court has recognized repeatedly that a state court may decide a federal constitutional claim "by reference to state court decisions dealing with federal constitutional issues."  DiBenedetto v. Hall, 272 F.3d 1, 6 (1st Cir. 2001); see also Clements, 592 F.3d at 54 (finding MAC had adjudicated claim on the merits where it cited state high court decision citing and applying U.S. Supreme Court decision, and so was entitled to AEDPA deference).  Moreover, where "the state court's holding squarely addressed the merits" of overlapping state and federal claims, "it would elevate form over substance to impose some sort of requirement that busy state judges provide case citations to federal law . . . before federal courts will give

-17-

deference to state court reasoning." <u>Zuluaga</u> v. <u>Spencer</u>, 585 F.3d 27, 31 (1st Cir. 2009); <u>see also id.</u> ("Such formalism would be contrary to the congressional intent expressed in AEDPA.").

In this case, the MAC's holding adequately addressed the merits of petitioner's admissibility arguments raised at trial and argued on appeal. The MAC expressly described and rejected petitioner's contention that Francis's statements were inculpatory as to Francis. <u>Francis</u>, 936 N.E.2d at *2 n.3. In addition, the MAC found that Francis's statements lacked all indicia of reliability. <u>Id.</u> at *2. These findings go to the heart of Hodge's federal claims that due process required admission of Francis's "credible" "confessions." When the MAC found the evidence lacked indicia of trustworthiness, it articulated the reason the <u>Chambers</u> claims failed. <u>See</u> <u>Chambers</u>, 410 U.S. at 300 (observing that the "confessions" at issue in that case were made under circumstances "assur[ing] . . . reliability").

The MAC cited <u>Hearn</u>, a case in which the MAC rejected arguments similar to petitioner's on both state and federal constitutional grounds. <u>Id.</u> In particular, <u>Hearn</u> rejected very similar <u>Chambers</u> due process claims:

> The defendant's due process claims based on <u>Chambers</u>[, 410 U.S. at 302], and <u>Green</u> v. <u>Georgia</u>, 442 U.S. 95, 97[ (1979)], also fail. As stated in <u>Commonwealth</u> v. <u>Drew</u>, 397 Mass. [65, ]72 n. 6, 489 N.E.2d 1233[, 1239 (1986)], "Generally, <u>Chambers</u> based claims have been consistently rejected by the courts." It is only in "rare and unique circumstances" that

-18-

> "the exclusion of evidence under hearsay rules
> defeats the ends of justice and thereby
> violates the due process clause." <u>Id.</u> at 72,
> 489 N.E.2d 1233. There was here none of the
> indicia of trustworthiness of evidence such
> that its exclusion violated fundamental
> fairness.

<u>Hearn</u>, 583 N.E.2d at 283.

Under <u>Chambers</u>, due process will sometimes require admission of hearsay statements made "under circumstances that provided considerable assurance of their reliability." 410 U.S. at 300. Here, the circumstances of Francis's statements provide no assurance of reliability whatsoever. Indeed, Hodge himself went so far as to characterize Francis's statements to Cunha as "patently false." 9 Tr. 220. As the trial judge and the MAC correctly observed, Francis's statements were <u>exculpatory</u>, not inculpatory, as to Francis. <u>Francis</u>, 936 N.E.2d at *2 & n.3. Francis's statements contrast sharply with the multiple confessions at issue in <u>Chambers</u>. 410 U.S. at 300-01 (noting that "each confession here was in a very real sense self-incriminatory and unquestionably against interest"). And while the confessions in <u>Chambers</u> were made to a "close acquaintance," <u>id.</u> at 300, each of the statements here was, as the trial court observed, made to partisans of co-defendant Hodge.

In these circumstances, we conclude that the MAC considered and rejected on the merits petitioner's <u>Chambers</u> claims raised at trial. Even if our conclusion were subject to question,

-19-

the <u>Johnson</u> presumption would, in the absence of contrary evidence presented by Hodge, require us to treat the federal claims as having been adjudicated on the merits. 133 S. Ct. at 1095-96.  To the extent the grant of habeas was predicated upon those preserved <u>Chambers</u> claims, Hodge's petition for habeas must fail unless the MAC's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  We find no such error by the MAC here.  In addition, petitioner makes no claim, nor could he, that the MAC's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>Id.</u>

B.      <u>Third-Party Culprit Evidence Theory of Admissibility</u>

        In footnote 4 of its opinion, quoted earlier, the MAC held that petitioner's theory, advanced to the MAC, that Francis's statements were admissible as third-party culprit statements were not made at trial, were not apt, and the exclusion created no risk of a miscarriage of justice (which is a state law exception providing relief from procedural default).  <u>Francis</u>, 936 N.E.2d at *2 n.4.  The MAC did not say whether it considered the new "third-party culprit" theory to be a separate doctrinal rule of no constitutional dimension or another attempted bite at the <u>Chambers</u> apple, which it had just rejected.  Nor did it need to do so.

The district court, as said, erroneously construed footnote 4's procedural default holding to extend to all of petitioner's due process claims. <u>Hodge</u>, 2013 WL 3070660, at *3-4. The MAC, though, did not use the term "third party culprit evidence" as shorthand for Hodge's preserved argument under <u>Chambers</u> that the Due Process Clause trumped state evidentiary rules. Rather, it considered and rejected on the merits Hodge's due process arguments made at trial. To the extent that petitioner's due process claims on federal habeas review are predicated upon a new third-party culprit theory, we are barred from habeas review.

Footnote 4 of the MAC's opinion invokes the principle that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent a showing of "cause" and "actual prejudice" or a "demonstrat[ion] that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 750 (1991). Hodge makes no attempt to show "cause" and "actual prejudice" on appeal. Nor does Hodge specifically argue that "failure to consider the claim[] will result in a fundamental miscarriage of justice." <u>Id.</u>

The remaining question, then, is whether the federal courts are <u>barred</u> from giving relief based on this third-party

-21-

culprit argument by the independent and adequate state ground
doctrine. See id. at 730 ("In the habeas context, the application
of the independent and adequate state ground doctrine is grounded
in concerns of comity and federalism."). Typically, "the fact that
a claim is procedurally defaulted in state court is an adequate and
independent state ground precluding federal habeas relief." Walker
v. Russo, 506 F.3d 19, 21 (1st Cir. 2007). At the same time,
"[t]he question whether a state procedural ruling is adequate is
itself a question of federal law." Beard v. Kindler, 558 U.S. 53,
60 (2009).

   We lay out the various steps in the adequacy of a
procedural bar analysis. First, "[t]o be considered an 'adequate'
ground to bar habeas review, the state procedural rule that is the
basis for a procedural default ruling must be regularly and
consistently enforced by the state courts." Pina v. Maloney, 565
F.3d 48, 53 (1st Cir. 2009). "Ordinarily, violation of [a] 'firmly
established and regularly followed' state rule[] . . . will be
adequate to foreclose review of a federal claim." Lee v. Kemna,
534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341,
348 (1984)). There is no doubt the procedural bar ruling by the
MAC here meets those requirements. In fact, the state procedural
bar at issue here bears none of the hallmarks of inadequacy that
would allow us to reach the merits. It was neither sporadically
applied, see, e.g., Barr v. City of Columbia, 378 U.S. 146, 149

(1964); <u>NAACP</u> v. <u>Alabama ex rel. Flowers</u>, 377 U.S. 288, 301-02 (1964); <u>NAACP</u> v. <u>Alabama ex rel. Patterson</u>, 357 U.S. 449, 457-58 (1958), nor irregularly put into practice, <u>see</u> <u>Ford</u> v. <u>Georgia</u>, 498 U.S. 411, 423-24 (1991). "We have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." <u>Janosky</u> v. <u>St. Amand</u>, 594 F.3d 39, 44 (1st Cir. 2010); <u>see also</u> <u>Gunter</u> v. <u>Maloney</u>, 291 F.3d 74, 79 (1st Cir. 2002) (finding that Massachusetts courts "regularly enforce[] the rule that a claim not raised is waived").[7] The Supreme Court has repeatedly counseled that restraint is necessary "to accord appropriate respect to the sovereignty of the States in our federal system." <u>Harris</u> v. <u>Reed</u>, 489 U.S. 255, 281 (1989) (quoting <u>Ulster Cnty. Ct.</u> v. <u>Allen</u>, 442 U.S. 140, 154 (1979)).

---

[7] "There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." <u>Kemna</u>, 534 U.S. at 376; <u>see also</u> <u>Holmes</u>, 547 U.S. at 324 ("Th[e] right [to present a full defense] is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are 'arbitrary or disproportionate to the purposes they are designed to serve.'" (quoting <u>United States</u> v. <u>Scheffer</u>, 523 U.S. 303, 308 (1998))); <u>Chambers</u>, 410 U.S. at 302 ("In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.").

Under these circumstances, a federal habeas court must limit its review of a state court's procedural bar ruling to review for "exorbitant application" of state law.  Kemna, 534 U.S. at 376. The circuits agree that Kemna means such a procedural bar ruling must stand in all but exceptional circumstances.  See, e.g., Downs v. Lape, 657 F.3d 97, 107 (2d Cir. 2011) ("Even if we agreed with the dissent that its characterization of counsel's statement was 'more likely,' the existence of a plausible contrary view [by the state court] leads us to conclude that the application of the rule is not exorbitant."); Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008) ("Because no . . . unforeseeable circumstances justifying a relaxation of the [procedural] requirements were present in [petitioner]'s case, we cannot say that the [state] Court's application of [the state procedural rule] was 'exorbitant.'").

On our de novo review of the district court's decision under the Kemna standard, we see no basis to upset the MAC's procedural default holding.  The MAC's conclusion that a third-party culprit theory of admissibility was waived was certainly reasonable and its application of the procedural bar rule was not close to being "exorbitant."  We have carefully reviewed the record ourselves and see no mention by Hodge's counsel of a third-party culprit theory at trial.  The theories of admissibility offered at trial did not include this argument.  And in light of the MAC's reasonable rejection of Hodge's due process claims in the body of

-24-

its opinion, there was no harm to Hodge from his counsel's failure to articulate that third-party culprit theory at trial.

We add a final word. The Supreme Court decision in Johnson noted that state appellate courts carrying heavy caseloads have adopted many mechanisms to handle their case load expeditiously, including short opinions. 133 S. Ct. at 1094-96. Federal habeas courts are required to keep in mind the burdens faced by those courts, including the MAC. "[F]ederal courts have no authority to impose mandatory opinion-writing standards on state courts." Id. at 1095.

### III.

We reverse the judgment granting the petition for habeas corpus. Habeas relief is barred, and the petition is dismissed with prejudice.